**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey  07602-0800
201-489-3000
201-489-1536  Facsimile
Cameron A. Welch, Esq.
Jason R. Finkelstein, Esq.
Attorneys for Plaintiff, The THS Company, LLC

| | |
|---|---|
| THE THS COMPANY, LLC, | : UNITED STATES DISTRICT COURT |
| | : FOR THE DISTRICT OF NEW JERSEY |
| Plaintiff, | : CIVIL ACTION NO. |
| | : |
| v. | : Civil Action |
| | : |
| EXPERIENT, INC., SCOTT R. MORRIS, | : **COMPLAINT AND JURY DEMAND** |
| and JOHN AND JANE DOES 1-10, | : |
| | : |
| Defendants. | : |
| | : |

Plaintiff, The THS Company, LLC ("THS" or the "Company"), complaining of Defendants, Experient, Inc. ("Experient"), Scott R. Morris ("Morris") and John and Jane Does 1-10 (collectively, the "Defendants") alleges and states as follows:

## INTRODUCTION

1.      Through this action, THS seeks, *inter alia*, damages arising from the unlawful misappropriation of its confidential, proprietary business information by Defendants.  Over its seventeen (17) years in the group housing industry THS has developed extensive, unique business models, methodologies and reports.  Morris, surreptitiously acting on behalf of Experient, a new competitor of THS in the industry, obtained access to this confidential information under false pretenses, posing as a prospective customer of THS.  To date, despite demand, Defendants have failed to return THS' proprietary information, confirming their intent

to use it to unlawfully compete.  In sum, Defendants' fraudulent acts have enabled them to glean the benefit of THS' extensive industry know-how, vaulting Experient into position to be a chief competitor to THS overnight.

## THE PARTIES

2. THS is a New Jersey limited liability company with its principal place of business at 200 Route 31 North, Flemington, New Jersey.  THS is a group sales travel service coordinator, engaged in the business of arranging group travel accommodations for amateur sports teams throughout the United States.  THS' clientele includes USA Volleyball, the sports' national governing body, and Spirit Cheer, All Star Challenge and the American Championship, the country's three preeminent cheer and dance competitions, drawing thousands of competitors to over two dozen annual tournaments across the nation.

3. As a group housing coordinator, THS' entire business model is premised upon accommodating its customers' varying needs by providing excellent customer service, seamless reservation services and a wide variety of hotel accommodations to suit the broad tastes of the tournament participants.  Over the preceding seventeen (17) years, THS has refined its business processes and developed a wealth of proprietary systems, policies and information including, without limitation, a host of specialized reports that it offers its tournament clientele through access to THS' proprietary website.

4. Upon information and belief, Experient is corporation formed and existing pursuant to the laws of the State of Missouri with its principal office located at 4401 Wilson Boulevard, Arlington, Virginia.

5. Upon information and belief, Morris is a resident of the State of Minnesota, residing at 516 Arthur Street, Hopkins, Minnesota.

40000/0603-10872149v1

6.     John and Jane Does 1-10 are presently unidentified individuals whom, upon information and belief, assisted Defendants in their unlawful conduct.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as there is a diversity of citizenship and the amount in controversy exceeds $75,000.

8.     Jurisdiction is also proper pursuant to 28 U.S.C. § 1331 due to Plaintiff's assertion of a claim pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*. This Court has supplemental jurisdiction over the remainder of Plaintiff's claims pursuant to 28 U.S.C. § 1367.

9.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in New Jersey and/or Defendants' unlawful conduct was directed toward a resident of this State.

## FACTS COMMON TO ALL COUNTS

### Morris Makes Contact With THS To Unlawfully Acquire Proprietary Information

10.    On or about May 21, 2014, Morris contacted THS, holding himself out a Board Member of the Edina Soccer Club ("ESC"), a Minnesota-based youth soccer organization with dozens of teams and coaches. Although ESC would have been one of THS' smaller clients, it is the type of organization that would typically contract with THS to expand the size and scope of its tournaments and/or gain knowledge of other tournaments for which THS provided housing services.

11.    Morris advised THS that he, on behalf of ESC, was interested in a demonstration as to how THS' services could assist ESC in both expanding the breadth of youth soccer

3

tournaments hosted by ESC and coordinating ESC's travel and accommodations at youth soccer tournaments hosted in other locales.

12. To verify Morris' purported affiliation with ESC, THS reviewed ESC's official website and found an individual identified as Scott Morris with a complete coaching profile, including a photograph and detailed biography evidencing an eight (8) year affiliation with the soccer club. This due diligence provided THS with comfort that Morris was, in fact, who he claimed to be during the parties' initial communications.

13. Over the ensuing two weeks, Morris engaged in two follow-up conference calls with THS' National Sales Manager, Kelly Dillard ("Dillard"), continuing to hold himself out as an ESC Board Member. During these calls, Morris explained to Dillard that he was vetting THS' potential services while serving on an ESC subcommittee tasked with selecting a housing service for the organization.

14. On Morris' end of these conference calls, Morris was joined by one or more individuals who were similarly identified as having an affiliation with ESC and engaging in part of the vetting process with THS. One of these individuals, a female, was summarily introduced by Morris as "Allie". On at least one call there was another, unidentified male participant in addition to Morris. Morris insisted upon setting-up these calls, providing the dial-in information for his conference service to, upon information and belief, mask the participants' identity and ensure the calls could be recorded.

15. In follow-up to the several conference calls between Dillard, on behalf of THS, and Morris (and others) allegedly on behalf of ESC, Morris sent a detailed list of twenty-three specific questions to Dillard, via e-mail, on June 6, 2014 (the "June 6 E-mail"). These questions, allegedly posed on behalf of ESC, requested the following information:

4

1. How quickly can you open a tournament from when we advise of one?

2. What is the minimum size (i.e. # of traveling teams) of a tournament that THS will support us with?

3. Can you please help to explain how you can help us to enforce our stay & play policy?

4. Can you help our club, and if so, how could you help us market to our families?

5. What is your response time to inquiries/emails/questions for our teams and us?

6. What is [sic] your team structure look like for our club?

7. How quickly do we receive final reporting and rebate checks after our tournaments?

8. Do you have flexibility to create different processes for our differing events?  We have team and individual events (e.g. Tournaments vs. Showcases)

9. Do you have an [sic] tournament landing page that can display all of our tournaments/showcases and can our teams pick which event they are attending?

10. How do you we [sic] need to send you tournament information and can what [sic] do you need from us to make that a more efficient process?

11. Do we have 24-7 access to see reports and what reports can we view?  Is the information real time?

12. Can you please share the tournament reports that we will get?

13. Can our primary sponsor place ads on your site?

14. Do you and if so what type of onsite tournament support could you provide for us?

15. Do you provide flexible call center hours based on demand?

16. Will we have a dedicated customer service representative(s)?

5

17. Can you walk us through the how [sic] our teams would book their rooms?

18. Can you walk us through our account support team?

19. Do you recommend a rebate and if so how much?

20. How does our pricing work? We keep the rebates and you the commissions and do you collect the rebates for us?

21. How do we know if we're getting the best hotel rates at the hotels that you contract with?

22. How close to our tournament date can we keep our rooms?

23. How can we make sure that we get fully compensated for all the reservations and rooms that our teams make?

16. To address these questions, and at Morris' request, THS scheduled a "Go-to-Meeting" (a web-based conference call) with THS' Vice-President of Housing Operations, Dasha Berkman ("Berkman"), for June 10, 2014 (the "Go-to-Meeting"). In advance of the meeting, Morris advised Dillard that his "tech person", Allie, would "set up" the call, once again ensuring that Morris controlled the conference call dial-in.

### The "Go-to-Meeting"

17. During the "Go-to-Meeting", Berkman made a lengthy, detailed presentation designed to answer Morris' specific questions. As the focal point of Berkman's presentation, she showed Morris examples of each and every proprietary report that THS provides to its customers, which reports have been honed and refined over THS' seventeen (17) years as an industry leader in the group housing industry. These confidential and proprietary reports (collectively, along with all other confidential information provided by THS in its several conference calls with Morris, the "Confidential and Proprietary Information") are otherwise only made available to existing THS clients via encrypted, password protected access to THS' secured website.

18. In further response to Morris' questions, during the "Go-to-Meeting", Berkman also provided significant insight into THS' unique process for implementing "stay-to-play" policies and the means by which THS staffs its call-center, handles customer reservation requests and conducts hotel negotiations.

19. All told, the "Go-to-Meeting" lasted approximately one hundred fifty (150) minutes.

20. Upon information and belief, Morris and/or Allie recorded the Go-to-Meeting, without THS' knowledge or authorization.

21. The day after the "Go-to-Meeting", Morris again e-mailed Dillard in his purported capacity as an ESC Board Member, stating as follows:

> Good morning Kelly,
>
> Dasha did a terrific job with the demo. Thanks for setting it up. We're waiting for her to send some links to the articles that your Dad has published about the rationale for Stay and Play.
>
> Our bigger committee will reconvene in mid-July to discuss and make a decision. Between now and then we'll be preparing a recommendation based on the presentations that we received. Thanks for your time and look forward to talking with you in a little while.

**THS Uncovers Morris' True Identity as a Strategic Sales Executive for Experient**

22. The level of detail of Morris' questions during the "Go-to-Meeting" aroused suspicion within THS and prompted THS to engage in further research regarding Morris' background. To THS' shock and dismay, that additional research led THS to uncover that Morris was employed by Experient, an organization well-versed in providing housing for conventions who had recently begun a foray into the amateur sports housing market. In fact, Morris is one of Experient's two Strategic Sales Executives for the "Sports Market."

23. Upon making this unsettling discovery, THS promptly contacted Dawn Martin ("Martin"), President of ESC, who confirmed that although Morris was one of ESC's coaches, he was neither a member of ESC's Board of Directors nor authorized to contact THS on ESC's behalf.

24. In the days that followed, Martin advised THS that Morris had not, in fact, been affiliated with ESC for several months -- even though ESC's website still listed Morris as one of its coaches. Since that time, Morris' ESC profile has been concealed behind the password-protected section of ESC's website.

25. The fact that Morris had never been an ESC Board Member and had not coached or worked in any capacity with any of ESC's teams since October 2013, months before Morris initially contacted THS, was subsequently confirmed in a letter to THS' counsel from ESC's Boys Director, Mitchell Zamoff ("Zamoff"), dated June 25, 2014.

26. Morris' and Experient's ill-intentioned scheme was now laid bare. Morris, along with other Experient employees, had fraudulently misrepresented themselves to THS in order to gain otherwise unauthorized access to THS' Confidential and Proprietary Information so that Experient, a relatively new player in the industry, could gain an unfair competitive advantage over THS. After THS investigated Experient's business in greater detail, THS learned that an individual by the name of Alisa Peters was one of Experient's National Account Managers based in Cary, Illinois. Given the similarity in name and her role with Experient, THS believes that Ms. Peters is the "Allie" who had participated with Morris in his teleconferences with THS and assisted Morris and Experient in their scheme.

27. Since uncovering Defendants' scheme, THS' issued a demand to Defendants for, *inter alia*, the return of all Confidential and Proprietary Information misappropriated by Defendants.

28. Notwithstanding THS' demand, Defendants have failed and refused to return THS' Confidential and Proprietary Information. Upon information and belief, Morris and/or Experient are now using such specialized knowledge to unfairly compete with THS in the amateur sports housing industry.

29. As a direct and proximate result of Morris' and/or Experient's unlawful conduct, THS has suffered, and will continue to suffer, substantial monetary damages.

## COUNT ONE
### (Fraud)

30. THS repeats and realleges the allegations contained in the preceding paragraphs of the Complaint as if fully set forth at length herein.

31. As aforesaid, Morris, individually and/or in concert with Experient and/or others, affirmatively represented to THS that Morris was a Board Member of ESC, vetting THS in efforts to identify a new group sales travel coordinator for ESC's teams and youth soccer tournaments. Morris similarly omitted disclosing to THS that he was affiliated with Experient, a relatively new, direct competitor of THS.

32. At the time Morris (either individually or at the direction of Experient) made said representations and/or omissions, Morris and/or Experient knew that those representations and omissions were false and misleading, knowing that such misrepresentations and omissions would cause THS to provide otherwise-unavailable information about the core of THS' business.

33. THS relied upon said misrepresentations and omissions to THS' substantial detriment by providing Defendants access to THS' Confidential and Proprietary Information.

9

34. Defendants' conduct, as aforesaid, was willful, wanton and in reckless disregard of THS' rights, and was otherwise wrongful.

35. By virtue of Defendants' fraudulent conduct, affirmative misrepresentations and/or material omissions, THS has sustained, and will continue to suffer, substantial damages.

**WHEREFORE,** Plaintiff, The THS Company, LLC, hereby demands judgment against Defendants, Scott R. Morris, Experient, Inc., and John and Jane Does 1-10, as follows:

(a) Directing Defendants to return to THS all Confidential and Proprietary Information obtained from THS, together with any and all copies, digests, notes or summaries thereof or relating thereto, including all e-mails, tape recordings, screenshots and/or photographs, whether in hard-copy form or electronically stored;

(b) Compensatory, consequential and incidental damages;

(c) Punitive damages;

(d) Interest;

(e) Costs of suit;

(f) Reasonable attorneys' fees; and

(g) Such other and further relief as the Court deems just, equitable and proper under the circumstances.

## COUNT TWO
**(Negligent Misrepresentation)**

36. THS repeats and realleges the allegations contained in the preceding paragraphs of the Complaint as if fully set forth at length herein.

37. At all times referenced herein, Defendants owed THS a duty to convey accurate information with respect to Morris' affiliation with Experient and ESC.

10

38. As aforesaid, Morris, either individually or in concert with Experient and/or others, affirmatively represented to THS that Morris was a Board Member of ESC, and omitted disclosing to THS that he was affiliated with Experient, a direct competitor of THS.

39. Defendants made such affirmative misrepresentations and/or material omissions while failing to exercise reasonable care and competence, and either knew, or should have known, that THS would rely upon said affirmative misrepresentations and/or material omissions that were false at the time they were made/omitted.

40. THS relied upon said misrepresentations and omissions to THS' substantial detriment by providing Defendants access to THS' Confidential and Proprietary Information.

41. Defendants' conduct, as aforesaid, was willful, wanton and in reckless disregard of THS' rights, and was otherwise wrongful.

42. By virtue of Defendants' negligent misrepresentations and/or omissions, THS has sustained, and will continue to suffer, substantial damages.

**WHEREFORE,** Plaintiff, The THS Company, LLC, hereby demands judgment against Defendants, Scott R. Morris, Experient, Inc., and John and Jane Does 1-10, as follows:

(a) Directing Defendants to return to THS all Confidential and Proprietary Information obtained from THS, together with any and all copies, digests, notes or summaries thereof or relating thereto, including all e-mails, tape recordings, screenshots and/or photographs, whether in hard-copy form or electronically stored;

(b) Compensatory, consequential and incidental damages;

(c) Punitive damages;

(d) Interest;

(e) Costs of suit;

40000/0603-10872149v1

  (f)  Reasonable attorneys' fees; and

  (g)  Such other and further relief as the Court deems just, equitable and proper under the circumstances.

## COUNT THREE
### (Misappropriation of Trade Secrets)

43. THS repeats and realleges the allegations contained in the preceding paragraphs of the Complaint as if fully set forth at length herein.

44. THS' Confidential and Proprietary Information, including THS' unique reports, policies and procedures for its group sales travel coordination business, constitute protectable trade secrets of THS' business.

45. Defendants have stolen and converted THS' Confidential and Proprietary Information through their fraudulent scheme to hold the aforementioned "Go-to-Meeting" and other conference calls with THS, which, upon information and belief, were recorded by Defendants.

46. Since obtaining THS' Confidential and Proprietary Information, and continuing through the present, Defendants have continued to improperly withhold and use THS' Confidential and Proprietary Information for the benefit of their business and to compete with THS in the amateur sports travel coordination market.

47. All of the foregoing has been done by Defendants with the intent to benefit and unjustly enrich themselves, and with the malicious intent to injure THS.

48. As such, Defendants have engaged in the wrongful acts of misappropriation of THS' trade secrets.

49. As a direct and proximate result of Defendants' willful and unlawful conduct, THS has sustained, and will continue to suffer, substantial damages.

40000/0603-10872149v1

**WHEREFORE,** Plaintiff, The THS Company, LLC, hereby demands judgment against Defendants, Scott R. Morris, Experient, Inc., and John and Jane Does 1-10, as follows:

(a) Directing Defendants to return to THS all Confidential and Proprietary Information obtained from THS, together with any and all copies, digests, notes or summaries thereof or relating thereto, including all e-mails, tape recordings, screenshots and/or photographs, whether in hard-copy form or electronically stored;

(b) Compensatory, consequential and incidental damages;

(c) Punitive damages;

(d) Interest;

(e) Costs of suit;

(f) Reasonable attorneys' fees; and

(g) Such other and further relief as the Court deems just, equitable and proper under the circumstances.

## COUNT FOUR
**(Tortious Interference with Prospective Economic Advantage)**

50. THS repeats and realleges the allegations contained in the preceding paragraphs of the Complaint as if fully set forth at length herein.

51. At all relevant times herein, Defendants knew, or should have known, that THS enjoyed certain prospective economic advantages in the specialized market of group sales travel coordination for amateur sports teams.

52. Through their efforts to obtain THS' Confidential and Proprietary Information and thereby develop new means for improving their business as a direct competitor of THS, Defendants have deprived THS of the benefits of its prospective economic advantage.

53. The conduct of Defendants constitutes, <u>inter alia</u>, tortuous interference with THS' prospective economic advantage.

54. Such conduct, as aforesaid, was willful, wanton, malicious and in reckless disregard of THS' rights, and was otherwise wrongful.

55. As a direct and proximate result of Defendants' willful and unlawful conduct, THS has sustained, and will continue to suffer, substantial damages.

**WHEREFORE,** Plaintiff, The THS Company, LLC, hereby demands judgment against Defendants, Scott R. Morris, Experient, Inc., and John and Jane Does 1-10, as follows:

(a) Compensatory, consequential and incidental damages;

(b) Punitive damages;

(c) Interest;

(d) Costs of suit;

(e) Reasonable attorneys' fees; and

(f) Such other and further relief as the Court deems just, equitable and proper under the circumstances.

## COUNT FIVE
### (Unfair Competition)

56. THS repeats and realleges the allegations contained in the preceding paragraphs of the Complaint as if fully set forth at length herein.

57. Defendants have engaged in a campaign to interfere with THS through, <u>inter alia</u>, false and misleading statements made to THS in order to obtain otherwise-unavailable access to THS' Confidential and Proprietary Information.

58. As a direct and proximate result of the foregoing activities, Defendants have unfairly competed with THS and otherwise utilized unfair business practices.

14

59. Such conduct, as aforesaid, was willful, wanton, malicious and in reckless disregard of THS' rights, and was otherwise wrongful.

60. As a direct and proximate result of Defendants' willful and unlawful conduct, THS has sustained, and will continue to suffer, substantial damages.

**WHEREFORE,** Plaintiff, The THS Company, LLC, hereby demands judgment against Defendants, Scott R. Morris, Experient, Inc., and John and Jane Does 1-10, as follows:

(a) Compensatory, consequential and incidental damages;

(b) Punitive damages;

(c) Interest;

(d) Costs of suit;

(e) Reasonable attorneys' fees; and

(f) Such other and further relief as the Court deems just, equitable and proper under the circumstances.

## COUNT SIX
### (Civil Conspiracy)

61. THS repeats and realleges the allegations contained in the preceding paragraphs of the Complaint as if fully set forth at length herein.

62. Defendants carried out their unlawful scheme in combination with each other and/or others for the improper purpose of wrongfully obtaining access to and misappropriating THS' Confidential and Proprietary Information, as outlined herein.

63. Defendants' conduct constitutes, among other things, a civil conspiracy.

64. Defendants' actions were willful, wanton, malicious and/or in reckless disregard of THS' rights, and was otherwise wrongful.

65. As a direct and proximate result of Defendants' willful and unlawful conduct, THS has sustained, and will continue to suffer, substantial damages.

**WHEREFORE,** Plaintiff, The THS Company, LLC, hereby demands judgment against Defendants, Scott R. Morris, Experient, Inc., and John and Jane Does 1-10, as follows:

(a) Compensatory, consequential and incidental damages;

(b) Punitive damages;

(c) Interest;

(d) Costs of suit;

(e) Reasonable attorneys' fees; and

(f) Such other and further relief as the Court deems just, equitable and proper under the circumstances.

## COUNT SEVEN
### (Computer Fraud and Abuse Act – 18 U.S.C. § 1030)

66. THS repeats and realleges the allegations contained in the preceding paragraphs of the Complaint as if fully set forth at length herein.

67. THS' computers are used in and affect interstate commerce in the course of THS' business.

68. Through Defendants' fraudulent conduct, Morris and/or Experient intentionally gained unauthorized access to THS' protected computers and Confidential and Proprietary Information during the Go-to-Meeting.

69. But for Morris' noted misrepresentations and omissions concerning his affiliation with Experient (and lack thereof with ESC), THS would not have allowed Morris access to THS' protected computers and Confidential and Proprietary Information via the Go-to-Meeting.

16

70. Defendants' actions were willful, wanton, malicious and/or in reckless disregard of THS' rights, and was otherwise wrongful.

71. As a direct and proximate result of Defendants' willful and unlawful conduct, THS has sustained, and will continue to suffer, substantial damages.

**WHEREFORE,** Plaintiff, The THS Company, LLC, hereby demands judgment against Defendants, Scott R. Morris, Experient, Inc., and John and Jane Does 1-10, as follows:

(a) Compensatory, consequential and incidental damages;

(b) Punitive damages;

(c) Interest;

(d) Costs of suit;

(e) Reasonable attorneys' fees; and

(f) Such other and further relief as the Court deems just, equitable and proper under the circumstances.

## JURY DEMAND

THS demands a trial by jury for all issues so triable.

COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Attorneys for Plaintiff, The THS
Company, LLC


By: */s/ Cameron A. Welch*
    Cameron A. Welch, Esq.
    Jason R. Finkelstein, Esq.

DATED:  August 20, 2014